The first case is United States v. Johnson, and we're ready to proceed. Good morning, Your Honor. Dennis Johnson on behalf of the Defendant Appellants. The Ninth Circuit held in the Cuero case as follows. The foundation of a charge bargain is that the parties reach an agreement as to what the prosecution will and will not charge and to what the Defendant will plead. By definition, a charge bargain means the prosecution will not later add charges or strikes. Justice Defendant will not plead to less than they agreed upon charges and strikes. The government's attempt to amend the complaint unequivocally breached its central promise to Cuero. The Cuero opinion held that the government knew about information in its possession used to amend the complaint to allege the new charge because it was in its possession even though it didn't realize it had it. The facts of Cuero are directly on point with this case and respectfully should be dispositive of its outcome. The production charge here was based on evidence in the government's possession and used to induce them to plead guilty of possession. Using that to file a new charge in production violated the fundamental promise that it would only- Let me just ask you, Counselor, you're not suggesting the government had actual knowledge of- No. I don't know if they did or not, but, you know- Well, the government, at the sentencing, they said- They had all the information at hand. They had the file. They analyzed it. They had all the sophisticated-  So you're arguing constructive knowledge, right? Is that- Well, constructive knowledge is obviously, means similar to this. I'm arguing the Palladino rule, which is all courts interpreting known to the government in federal plea agreements have held that they're held in- No. I read Palladino. Palladino says, according to the government, the information on the tape that serves as a basis for the dispute enhancement was known to the government at the time the plea agreement was signed. So there was no dispute, as we have here, of whether it was, you know, that was actually known to the government. They had the tape. They knew about the tape, but another AOSA came in and took a different position. So that's not- Well, I'm not sure. I thought Palladino didn't make clear at all that they had actually listened to the tape. They had the tape. They admitted that. I think it's pretty clear that they said, we hadn't focused on it. We didn't know what was in it. No. I just read you the sentence. Okay. Does Palladino arouse in the sentencing context, the context of the sentencing enhancement, correct? Palladino? Yes. Yes. It was a sentencing case. And here we have something that was never charged by the government, wasn't in the indictment, was a crime of a quite different nature than those charged. Why was it reasonable for your client to expect that that was a charge that was known to the government or covered by this agreement? Okay. The defendant would have reasonably understood that any charge contained in those files was known to the government and was being waived by them, even if it's a perceived charge, in order to induce him to enter into the plea agreement. It was never subject to any discussion. It was never charged, right? Production was never charged as a crime. No. What the government told him is that we thoroughly searched the files using sophisticated software. And then he would have understood that they actually meant that. They had searched the files, and if it was there, they would have known about it and were waiving it. But this is a crime that production, production is a crime, an uncharged crime here that you're saying was contemplated by this agreement that carries with it a penalty of 15 years minimum, 30 years max, whereas possession is up to 10 years and distribution 5 to 20. So the different character and nature and magnitude of penalty, I still don't really understand why it was reasonable to think that that was part of what was contemplated in the plea agreement. No, it wasn't part of what was contemplated. This went beyond what was contemplated by the agreement. He understood that they were giving him a possession charge in exchange for 45 months and that they had thoroughly searched all the files. So you're saying your client is reasonably the government knew he had produced child pornography and was going to give him a pass on it and not make a plea to it and not mention it in the sentencing? I'm saying that he was told they had thoroughly searched all the files. And they had done so with sophisticated software that allowed them to do that. And if there was any other charge in it, they would have been aware of it and were waiving it in order to get into it. But didn't the government inform the district court that it was not aware of any allegations of abuse within the defendant's home? It did say that. And again, if you're looking for having to prove actual knowledge by the government, no court's ever found that. The courts find that if they had information in their possession, they're held to have known about it, whether they understood they had it or they understood the significance of it. Go ahead. Suppose you had a case where it was a drug case, they seized a gun and the drugs. And it says we're not going to charge you anything related, anything we know about related to your narcotics activity. And the fingerprints on the gun, if they had lifted fingerprints on the gun, it would have revealed a murder. You're suggesting that because they could have found that out if they had pulled, took the prints off the gun and ran it through a database that the defendant would reasonably expect to get a pass on the murder? I'm not sure what, I'd have to listen to the hypothetical again to understand that. It's pretty similar. I think you have to do an additional test, you have to get the metadata here, and it takes a few steps, but you could have established the murder. Well, I think- Exactly what happened here, it wasn't like your client was on the video. They had to get the metadata, they had to figure out it was his home, they had to hear his voice, recognize his voice on the tape. And then they had to match up furniture from the video and get another search warrant to the home. There were a lot of steps. Correct. So why would your client believe that even if they had done, quote unquote, a sophisticated search of his computer, that somehow they knew he was producing child pornography, that would be a pretty big leap. Well, among other things, the terms of the release covered this charge, specifically. It would cover what? It covered this charge. Production would have been within the scope of the release. The release covered any other charge in connection with- Well, it included prosecution for offenses known to the United States as of the signing date relative to your client's possession or distribution. You're saying that the only interpretation of that is related to, and related to possession or distribution includes production. But the government says in the text would support an interpretation that it means relative to your possession or distribution, not production, which is a separate charge with much higher penalties. And in Palladino, the government pointed to that same language, saying the defendant would have understood, which is the controlling characteristic here, that the government would only use newly acquired information, not information already in his possession. Palladino concerned sentencing, though. There was no new crime charged. We were talking about the number of points to be attached to a sentencing enhancement and no new crime. This was a charge bargain, not a sentencing case. So what did the government know when it said to you, here's the deal, just as in Guerrero? But this plea agreement speaks only to two crimes, knowing possession and distribution. Correct. Nothing about production. Correct. Which is a crime of a different quality and magnitude. And again, that's the thing. They had thoroughly searched all the seized files, and this is the deal they made for you. We'll charge you with possession if you plead to this. This is the same thing as Palladino. They were held to have known about the information, if it was in his possession, even though they didn't realize the significance of it until after the plea. And they looked at that same language to say the defendant would have understood it was new information, not information in his possession. And they did the same thing, I mean, Wilson holds a similar thing. Your view is that a fact that could have been known to the government in the Palladino context, which involved no change in the crime charged, but just in the amount of penalty that was appropriately calculated under the guidelines. Our view is that- This is exactly the same, despite the difference in charging. No, our view is they violated the plea agreement because the release specifically covered a production charge. It was in connection with the defendant's possession of that file. Any charge contained in the production, in the CP files, would have been in connection. You said the release specifically covered the production charge, but it doesn't mention production at any point. Well, no, you have to apply the definitions of the terms the government used. The government used relative to, which means in connection with. This was a file that he possessed, it was used to convince him to plead to possession. And then it says in possession with his, in relative to, or in connection with his possession of those files. This was in connection with his possession of those files. It was specifically in connection. Can I ask you to address the Fourth Amendment argument that you make? I mean, I understand the government's position to be that these images were contraband, so essentially your client had no Fourth Amendment interest in them. So everything that happened after they were sent to NICNIC, we can disregard. Yep. The court's sole support for that was the Andreas case, which says merely that contraband has no right to privacy. Not that metadata describing a file labeled contraband loses all protection of the right to privacy, and can be searched for anything thereafter, even for evidence beyond the warrant used to seize it. And even for crimes not involved, or even for privacy-protected crimes. So let me ask, I agree with you that if they had taken a mirror, a mirror of the entire computer, and they search, they do a forensic search, and identify some aspect that's responsive to the warrant, the defendant may well still, in a hypothetical case like that, have a reasonable expectation of privacy in the material that's not responsive to the warrant, and may seek its return under Rule 41. But as to the metadata associated with this contraband, doesn't it exist, I mean it's inextricable, it only exists by virtue of the fact that the videos were produced. The location information came into existence at the time. Isn't it bound up with the images? Well, this court in Ganey has held that it describes information in that file. Agent McCullough said there's nothing illegal about metadata, it's X's and O's. The question is whether or not that becomes searchable because a file that it described is determined to be contraband. There's no support for that anywhere. The court cited none. It's Andrea's case, says again merely that contraband doesn't have a right to privacy. Any of their cases say the same thing. Not that the metadata morphs into contraband. And Jacobson said you can do a further search of contraband if it's not designed to uncover any other arguably private information. Here is a GPS, private protected information, which had never been waived, they were after, to try to prove the defendant produced this file by matching it to his residential GPS, which didn't match. But that was the purpose of NACMAC's search, to go outside the warrant. Warrant did not cover GPS. Wasn't the metadata responsive? I mean, it was called for in the warrant application. No, it was not. There's nothing, you won't find the word metadata in there anywhere. On page eight of the supplemental appendix, it says that they can search for evidence of who used, owned, or controlled the computer at the time the things described in this warrant, which is the child pornography, were created, edited, or deleted. So I don't understand why, if you're allowed to determine when something was created, obviously the metadata would tell you when something is created, right? Well, first of all, it has to be responsive to the warrant. So you can have a talismanic clause in the warrant, but it doesn't mean that the evidence is responsible to evidence of possession or distribution. That's the purpose of the Rule 41 review. You can over-season a digital search case, but then you have to bring it back within a reasonable time to determine what was responsive to the warrant. I don't understand that. It says you're allowed to look for information about when it was created. Why would you go back to a judge if he tells you you can look for that? Why didn't they, that's the whole point. They could have got a warrant. They chose not to. They were looking for evidence of production which was not covered by the warrant. They didn't get a warrant, they should have. They could have done that and it was personally unconstitutional because they did not. Why did they need to get a second warrant? Well, because the information here was GPS, private protected, never disturbed. The right to privacy had never been violated. And because that information, GPS, was not responsive to the warrant. The warrant covered evidence. Let's assume for the moment that we disagree with you as to whether the metadata was responsive to the warrant. Does that defeat your Fourth Amendment argument? That it was responsive? Let's say we disagree. Assume for the moment we disagree and we think the metadata was responsive to the warrant application. It fell within the scope of the warrant application. Does that defeat your argument or is there more to it than that? Well, again, I think the brief now admits, first of all, that they didn't have probable cause, page 5, footnote 2. And they would have been unable to obtain a warrant here. That's page 27, footnote 7. So they didn't have probable cause to begin with. Indeed, the metadata here had a private protected information in it. No court has ever found that metadata morphs into contraband. If a file it describes is labeled contraband, there's no court that's ever held that other than the lower court. The case cited and all the government's cases state merely that contraband does not involve private protection. I'm interested in the answer to Chief Joe Zoghieson's question, though. If we determine it is within the warrant, notwithstanding everything you're saying about what the government conceded, we think it's in the warrant, then they can go back and search it for additional information, right? We would concede that. Well, again, I guess that would be correct if you disregard Carpenter's pronouncement that metadata has a private protected interest. And you need a warrant to search it. And you ignore Walter's saying it should be viewed as an adjoining file that wasn't part of that file, but rather described it. We wouldn't be ignoring that if we determined that the warrant called for it. We wouldn't be ignoring those cases. We'd be saying that the warrant called for it, and they could search it later. If the warrant at the time, they could go back and search it later. You don't have a reasonable expectation of privacy in something that is within the scope of the warrant. If Rule 41 had no meaning and didn't exist, and the warrant said, you have a right to search for evidence of production. As part of your effort to prove possession or distribution, then you're right. I mean, at that point, it would be hard to argue with the point. It doesn't say that. Do you think it's ironic that in connection with the immunity issue, you're saying possession and distribution, that production is related to that, but when it comes to the warrant, you're saying no. If you're allowed to search for possession and distribution, then- No, I think- The production is not related to that warrant. I think the difference here is on the government. Again, bearing in mind that you looked at the defendant's understandings. They're the one arguing that somehow we didn't have knowledge of it and couldn't get it because, or we could have got it and we didn't get it. Therefore, they're held to have knowledge. So they're on the horns of a dilemma here. One, if they knew about it and were free to search it, as the government said, and as they argue, they're wanting the same. Then they're held to have knowledge of that information. And if they didn't and they needed a warrant, then the search was illegal, and NECMEC's search was consequently illegal as well. Either event, whether it's dismissed pursuant to the plea agreement itself, or whether it's dismissed pursuant to the Fourth Amendment and they needed a warrant and didn't get it. If they didn't need a warrant, then they're held to have knowledge of it because they had full access to that information. And all the cases dealing with known to the government suggest that if it's in his possession, even if they didn't know they had it, and they didn't realize its significance, they're held to have known about it. And we looked at the defendant's reasonable understanding of what he would have expected. Justice Impaladino, he would have expected only information not in their possession. Particularly after they said, we took all the files and searched them with sophisticated software. And here's what we're going to give you after all of that searching. Our prowess is unparalleled. Nine pages of the warrant affidavit in 2018 said we can search those files like nobody else. Then they said we've thoroughly done that, physically watching these files. Then they said, here's the deal. If you plead to this, we'll give you 45 months. Then he fully served that, and then after that, he got another 240 months. It's the same thing as Wilson. We're doing that exchange, change the defendant's exposure so dramatically that he would not have expected that when he signed on to the plea deal. The same thing is true here. Thank you, Mr. Johnson. Thank you, your honors. I'm Eugenia Coles from the United States. If we can begin where the court left off on the Fourth Amendment issue. I think there's been some confusion around the government's statement. It has been quoted in defendant's brief. There was a challenge to the 2018 search warrant, and to whether or not we had authority to seize the video that became the basis for the subsequent charge. In responding to that, the government explained that the defendant had possessed that video in 2018, and therefore it was appropriately seized, even if it had been produced in 2016. The government believes, as the court's questions have highlighted, that the metadata associated with all files was appropriately seized at the time of the warrant. It was therefore held as contraband, and was later submitted to NCMEC. Why is metadata contraband? I think the key is, your honor, as you suggested, it's intertwined with something that is contraband. In this case, the metadata associated with the video answered just those questions that we would have about the video, where and when it was produced, or where and when it was traded. It's not the kind of location information that the Supreme Court was concerned about in Carpenter, that showed a pattern of life, or revealed non-criminal aspects. Well, you know, your adversary, in his brief, seems to say that this is a case not like Andreas. You rely on Andreas, and as I understand that case, the government lawfully opens a container. It's filled with heroin. They arrange for a controlled delivery, and they reopen it later. And the court says, well, it was contraband. They can reopen it. They lawfully opened it before. But this is more like a case where, why isn't this more like a case where your forensic investigators lawfully looked into the contents of the computer. They uncover thousands and thousands of images of child pornography. They set it aside, move on to other things. Then they come back, look through those images again, and find a closed box. And they open that closed box in the middle of, let's assume this is a container filled with drugs. I'm getting my hypotheticals confused. They open the closed box and find a narcotics ledger. It's not unlawful to possess the narcotics ledger. It is unlawful to possess the heroin. So what allows them to go back in to find the metadata? I think as the court has suggested, it depends on what was originally seized under the warrant. In your hypothetical, if the government was entitled to seize the entire box, and it was entitled to seize indications, ledgers, communications, or other things that showed who had handled any controlled substances that were seized, that would have been appropriately held by the government. Then you're agreeing then that it's not contraband in and of itself, that the warrant has to include something beyond just the seizing of contraband. When you can see that if the warrant just said you can seize child pornography, period, you can seize images of child pornography, that you then could not search the metadata because the metadata is not contraband? I think I would prefer not to go that far, Your Honor, in the sense that... Let me give you the hypothetical, as we'll see in Judge Livingston's. Let me just tweak it a little bit. Suppose it was a physical image of child pornography in a folder, and there was a sealed envelope with the child pornography that said, information regarding when created, sealed. If the government had a warrant just to seize child pornography, could they open that envelope? In that particular instance, Your Honor, if the two items were inherently not just severable, but actually severed, they existed separate from each other. They're in the same folder, but they exist... The information regarding the creation is in a sealed envelope. It's pretty similar to metadata. We can argue about whether metadata is sealed or not, but metadata exists separately from the image itself. I think it exists separately, Your Honor. I think the slight distinction with the hypothetical would be, as the Court has already pointed out, that metadata is only created by the creation of the image. In the hypothetical, the notes would be a separate thing that had been created as a journal. But it's pretty close. I don't think any court has ever classified metadata to be contraband that in itself could then be seized if you had a warrant that just allowed you to seize contraband, right? We've been saying something for the first time that no court has said. Agreed or not? I believe you would be saying something unique, Your Honor. I think the fortunate matter is you do not need to say it in this case. On the facts of the case before you, because the warrant did authorize the metadata seizure, the complete files were appropriately seized at the time of that first seizure. And then they were passed to NCMEC for review as appropriate by statute. Could you turn to the plea agreement? What did the State intend by including relative to his knowing possession or distribution of child pornography? It seems to me that that broadens the scope of the release. And you could have just said that the State won't prosecute him for any further knowing possession or distribution of child pornography. But it said crimes, any other criminal offenses relative to. Why isn't it perfectly reasonable for the defendant to have anticipated that this would be a part of any kind of crime related to child pornography, whether production or something else? Those words weren't necessary, right? I think the words in many ways were not necessary. But I think when they are read in context with the complete phrase, what's known to the government relative to these two crimes, they come into very clear view given the factual setting of this case. The defendant had been charged with distributing the images that he later pled to possessing. So there was an underlying distribution issue there to be concerned about. Additionally, his home had been seized and thousands of videos and images had been searched. So his thousands of videos and images had been seized. And he would have had exposure for possession of any of those images as well. But your description just goes to emphasize the correctness of your adversary's description that this was a charge negotiation. And therefore, it was reasonable for him to expect that anything that might have been known to the government related to possession and distribution, and since we construe ambiguities in plea agreements against the government, that would include production. It was ascertainable by the government before this plea agreement was entered into that he had engaged in production. It just was a circumstance that an oversight by Agent Moynihan that caused not to be known at that time. Isn't that right? In many ways, yes, Your Honor, but I think there are two separate parts to your question and perhaps two separate answers to them. As to the language regarding possession and distribution, as the court has noted, production of child pornography is an entirely different statute. It's a different level of crime. The government put the phrase other criminal offenses in there. If you wanted to limit the immunity to only possession and distribution, why would you put other criminal offenses relative to? And I was scratching my head a little bit because the government usually stands at that podium and argues that related to or relative to is a broad term, like in a search warrant, that covers a lot of different things. And here the government is taking a pretty narrow view of relation to, in this case, especially when it says other offenses. Let me give you a hypothetical. Putting aside the issue of known to the government, that's a whole separate question, but assuming we were just focused on the other language, suppose you had a crack cocaine case where someone possessed and distributed crack cocaine on a particular day, you know, 50 grams. They plead guilty. They have this language. You're not going to be prosecuted for other criminal offenses related to your possession and distribution of crack cocaine. And right before they went out to the street and sold it, they cooked it in their apartment. So they manufactured crack cocaine. Could the government say that the cooking of the crack cocaine, they could turn around and charge him with manufacturing crack cocaine because it only says possession and distribution of crack cocaine? Or is that relative to? Your Honor, I think in that specific hypothetical, there is at least a strong argument that if it included the complete language of this release, both the known to and the relative to, what was known to the government and relative to, if all that was at issue in the immediate case, all that had been discovered, all that was discussed among the parties before the court and otherwise, was the distribution for which the defendant had been charged, and the government did not have actual knowledge of any production. But the actual knowledge is separate from what the scope is of the crimes that are involved. Those are two separate things. I don't understand how, apart from the knowledge issue, how you could make the same argument about a gun. If someone commits a murder, and it says in relation to the murder, and they happen to be a felon in possession of the gun, when they shot the person, can the government say, well, we're going to now charge you after you've been acquitted, or not acquitted, but you pled guilty to the murder, we're now going to charge you with gun possession. I've seen a lot of these provisions in plea agreements. They're not construed as narrowly as you're suggesting. If it's all related to the same event, the fact that it's a different crime isn't what controls. We use the term relative to or in relation to. Your Honor, it may not be, but I do think there's a significant difference when we're moving both between the type of crime, not something under the same statute. We're also talking about something at a different period of time. The production in this case was 2016. The possession being charged and the distribution discussed was in 2018. So we have both temporal separation as well as the legal separation. I think the closest analogy from an existing second circuit case would come from the 2012 summary order in U.S. v. Joseph. In that case, the government, at the time it issued a release based on what was known to the government, releasing related crimes to gun offenses, had received a tip or information the defendant might be hiring someone to murder an ex-girlfriend. The court later held that, in fact, that was new information to the government at the time of sentencing. Again, a different setting in the sentencing context, not in the new crime. But that's also related to knowledge, what was known to the government. Explain, with the Chief Judge's permission, why the constructive knowledge rule that I think your adversary is urging the court to apply in this context should not be the law. Or is not the law. He's suggesting it is the law based upon Palladino and some of the other cases. Your Honor, I think it is not the current law. Palladino was, in many ways, the kickoff of a line of cases rather than the end of a line of cases. And I think the court, in that case, while that ruling has been reexamined many times, focused in part on the fact that the government did have actual knowledge in the hands of the AUSAs, both making the deal and the sentencing recommendation. In this case, we have findings by the lower court supported by the filings of the parties at sentencing on the initial matter that that knowledge was not here. The agents were not aware of the information related to production. There was no suspicion of production in this case. The parties had not discussed production. It was simply something that was entirely off the table at the time of the initial negotiations. And I think that is a significant distinction. Can I ask a return to the Fourth Amendment issue just for a moment? The appellate argues in his brief that the search was also untimely. And in the physical world, you execute a search and you leave an inventory. I get that in the forensic world, it takes a period of time to search the computer. But here, there was an initial search, a report on the results of that search, and this next search that covers the GPS location data takes place months later. Does that make any difference for the Fourth Amendment, assuming again that it's within the scope of the warrant, you're entitled to go back as many times as you want? Your Honor, I believe if it's within the scope of the warrant and we're talking about an item that was seized and identified as responsive, then yes, the government had the authority to review that item again, or in this case, to simply pass it to NCMEC to conduct the NCMEC review. My understanding of the appellant's argument is that he's challenging the timeliness of NCMEC's review as related to the 2018 warrant, and I believe there's several layers of separation in that case. And I believe I'm out of time, but thank you, Your Honor. I'll try to respond briefly. This file was not seized properly, it was seized, but then the responsiveness review, the entire purpose of that, according to Rule 41, is to determine what fell within the warrant. Neither metadata nor GPS were labeled as responsive in the Rule 41 Forensic Review Report. The plea agreements are governed by what the defendant would have understood. That's the guiding principle of these. The government would have understood that the definitions of this plea agreement would actually be applied. The court's right. Any other means not the ones named or particular or specific, but not the ones identified previously. Relative to is what in connection means. And it would have specifically related to defendant's possession, not comparing the conduct in the two charges. This charge was covered by the release expressly. That's what the defendant would have understood, and he would have understood it based on their statements that they had thoroughly searched those based on his comprehensive ability to do so, and had thoroughly watched it. Paragraph 5 of the agreement demonstrated that it terminated that case. It says that after the plea agreement, if accepted, the only thing left would be the imposition of sentence, which was done before the files were sent to NACMEC. Every indication was that the defendant understood that this case was going to be terminated by virtue of entering into this. It was a charge bargain. Here's the deal. We've analyzed all that. Here's what we're going to charge you with. If they missed something, you're right. It's a Santabello-type error. And indeed, it says there, you don't leave them the terms of an agreement if in fact what they did violates that, even if they made a mistake in doing so. The government's other offenses were not as specific as this, but on the other hand, it was covered by the plea agreement. It terms it exactly. I haven't heard about the Joseph case yet. I don't know what it says. Can't talk about it. But on the other hand, relative to all the terms, any other means beyond the ones specified, the court held only the further charge left. They could have said, we will not charge you for any other further charge of possession or distribution. It did not do that. You're right. Production was not involved. They needed to get a new warrant once they decided to go beyond the scope of that warrant. And it was like they did in Ganius. They went and got a new warrant to search for the accountant's information. They didn't do that here. You can't void a warrant by saying, I pick a talismanic clause within that saying control. And that gives you the right to go beyond the warrant. So you're saying that they needed a new warrant to go look at the metadata. But without the metadata, they couldn't have known because his face was not on the video, that it was him. And yet, they should have known or could have known even without the other warrant. And therefore, we should read this agreement to cover the crime that they weren't entitled to know about. You put that as my dichotomy. I put it as theirs. They are arguing, and the law says that the defendant is entitled to a charge that's going to be lived by. They say, we could have searched it. The court says they could have searched the metadata willfully. Therefore, it was known to them according to the Palladino Rule in Constructive Knowledge. If they needed a warrant to look at it, which is our view, they committed a per se unconstitutional search. And they needed a warrant to do that. They were beyond the scope. It was not within the scope of the prior one. Whether you could read control of the computer, that gives us the right to search anything in it. By the way, think about the database after this case. The federal government can take any information from anybody who pleads, anybody who's found guilty. If you label the computer contraband, anything in that computer creates a national database which can be searched by the government. Because the court says you can go to any other agency. You can do it. You can send it to anybody. You can go to any other agency and search those files. Match them up to crimes. There's a bank robbery. Let's see if anybody's in the database that might have been there at the same time. The limits of this holding are extreme. And they are not in anywhere supported by any case law. And Andreas doesn't say that. You're right. Andreas says that you can look at the same contraband. It gives them the right to re-watch the video. Not to go beyond that. And they didn't. They went beyond it here. Thank you both. And we will take the matter under advisement.